312 P.2d 564

Ida and James WILLIAMS, Plaintiffs,
Ida Williams, Appellant,
v.
ZIONS COOPERATIVE MERCANTILE INSTITUTION, Defendant and Respondent.
No. 8614.

Supreme Court of Utah.

June 10, 1957.

284

———◆———

Dwight L. King, Salt Lake City, for appellant.

Dean E. Conder, Salt Lake City, for respondent.

WORTHEN, Justice.

Plaintiff Ida Williams, appellant in this court, appeals from a judgment of dismissal with prejudice at the close of plaintiff's case. Appellant brought suit for damages sustained when the car she was driving was struck by defendant's truck. Plaintiff was proceeding south on B Street, a through street in Salt Lake City, at about 20 to 25 miles per hour. When plaintiff reached a point about 25 feet north of the intersection of Third Avenue and B Street, she saw defendant's truck stopped at the stop sign on the west side of B Street. Plaintiff then looked to the east for westbound traffic and then proceeded through the intersection. B Street north of Third Avenue is 42 feet wide, and south is 40 feet. Third Avenue is 30 feet wide west of B Street, and east is 40 feet; each street has two lanes of traffic.

When plaintiff was half way through the intersection she was struck by defendant's truck. The front end of defendant's truck struck the car driven by plaintiff on the right door and near the car's center. The automobile driven by plaintiff was in the southwest quarter of the intersection and only a short distance east of the west edge of the intersection when hit. On these facts the court held plaintiff contributorily negligent as a matter of law.

With this ruling we cannot agree. The testimony establishes the following:

(a) Plaintiff was moving *down* B Street, a through street.

(b) When plaintiff reached a point approximately 25 feet north of the intersection of the two streets, she saw defendant's truck *stopped* at the stop sign on Third Avenue protecting B Street traffic.

(c) Plaintiff was moving *down* B Street and nearer to the intersection as she ob-

served defendant's truck, and concluded that defendant would not start from dead stop and move into her.

(d) Plaintiff looked at the truck long enough to conclude that it was completely stopped and made no movement whatsoever.

(e) Plaintiff's car was in motion, shortening the distance between the car and truck during the time she observed the truck and concluded it would remain stopped.

(f) Plaintiff after satisfying herself that defendant was stopped, turned and looked to the east.

 It must not be overlooked that both streets in question were relatively narrow. The entire distance traveled by plaintiff from the point where she saw defendant's truck stopped to the point of impact was approximately one-half the width of Third Avenue plus the 25 feet from the intersection to where plaintiff saw the truck, or 40 feet. We must view the testimony in the light most favorable to plaintiff in determining the correctness of the judgment of dismissal at the end of plaintiff's case.[1] Plaintiff was entitled to assume that defendant, stopped at the entrance to the through street, would use reasonable care for the safety of both drivers. Plaintiff certainly could not be held negligent as a matter of law in not anticipating that defendant would drive negligently or that defendant would fail to honor what she thought was her right of way.

The testimony fails to establish conclusively which entered the intersection first. The stop sign at which defendant stopped was at least 11 feet from the intersection. Defendant relies on two statements made by plaintiff and her witness, Mrs. Singleton.

Mrs. Singleton was asked the following question, and answered as indicated:

"Q. As you approached the intersection of B Street and Third Avenue, tell what you observed. A. As we approached the intersection of B Street and Third Avenue, there was a Z. C. M. I. truck standing at the stop sign. We proceeded to go on down and suddenly this truck pulled out into the intersection."

The statement of Mrs. Singleton is far from a statement that the truck pulled into the intersection before the plaintiff's car entered it.

Plaintiff testified as follows:

"A. No, Mr. Conder, after I saw the truck standing there, thinking he would stay there until I passed, then there wasn't any reason for me to keep watching him. If I had my head turned watching him I could have ran into someone else."

---

1. Bates v. Burns, 3 Utah 2d 180, 281 P.2d 209.

We cannot say that plaintiff was negligent as a matter of law because she, after surveying the situation to her right, turned and looked east for traffic from that direction without looking again to her right before proceeding through the intersection. As heretofore observed, plaintiff had less than a second and a half to survey the defendant's position behind the stop sign and to observe, as she testified, that while she looked at the truck she did not observe it make any movement whatever, and to take a look to the east to ascertain if there was any westbound traffic.

Nor is the law such that the driver entering the intersection first necessarily has the right of way.

Section 41-6-74, U.C.A.1953, provides:

"Vehicle entering a through highway.—The driver of a vehicle shall stop as required by this act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

"(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

The statute requires the driver entering a through highway to yield the right of way to other vehicles which have entered into the intersection from the through highway *or which are approaching so closely* on said through highway as to constitute an immediate hazard.

■ A fact question was presented as to whether defendant entered the intersection when plaintiff was therein, or if defendant entered the intersection when plaintiff was approaching so closely on said through highway as to constitute an immediate hazard. The further fact question was presented as to whether defendant had entered the intersection under such circumstances as to impose on plaintiff the duty of yielding the right of way.

Those are proper jury questions and should have been submitted.

After plaintiff observed defendant stopped at the stop sign, plaintiff traveled the 25 feet and the north half of the inter-

section with Third Avenue before the impact occurred. At twenty miles an hour, plaintiff would travel that distance in less than a second and a half. Had plaintiff without the loss of any time whatsoever realized, when she saw defendant stopped, that defendant was going to pull into the intersection, regardless of plaintiff's position, still with most favorable road conditions and a vehicle mechanically perfect, plaintiff would have traveled 43 feet and into the course of defendant's truck before her car could have been stopped. We cannot say that plaintiff was negligent as a matter of law in driving into the intersection under the conditions present. Plaintiff's negligence, if she was negligent, in so doing is not so apparent that all reasonable minds would agree upon that fact.

Nor are we able to say with certainty that her negligence, if any, in so doing was the proximate cause of the accident. That, too, was a fact question to be determined by the jury—being one on which reasonable minds might well and probably would disagree.

In the case of Martin v. Stevens,[2] this court said:

"* * * Although plaintiff had the right of way * * * yet there devolved upon him the duty of due care in observing for other traffic. But in doing so he had the right to assume, and to rely and act on the assumption that others would do likewise; he was not obligated to anticipate either that the other drivers would drive negligently, nor fail to accord him his right of way, until in the exercise of due care, he observed, or should have observed, something to warn him that the other driver was driving negligently or would fail to accord him his right of way. If this principle is not clear in the earlier Utah cases, it is firmly established by the more recent expressions of this court."

The rights of motorists in the use of our public highways are correlative with mutual duties and obligations. If one dare not go through a green light or along a through street if a car is stopped at an intersecting street until he is sure the said car is not going to move, his right to proceed will have been forfeited while he waits.

Common sense and fair play have their proper place, and the standard of due care under existing circumstances must still be the rule.

Reversed. Costs to appellant.

McDONOUGH, C. J., and CROCKETT, WADE and HENRIOD, JJ., concur.

2. 121 Utah 484, 243 P.2d 747, 751.